# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JAMES C. HEINO**, | Case No. 23-cv-1270-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **U.S. CENTER FOR MEDICARE;** and **AETNA HEALTH MANAGEMENT LLC,** | |
| Defendants. | |

James C. Heino, Plaintiff, *Pro Se.*

Shannon L. Wodnik, GORDON REES SCULLY MANSUKHANI, LLP, 701 Fifth Avenue, Suite 2100, Seattle, WA 98104. Of Attorneys for Defendant Aetna Health Management, LLC.

**Michael H. Simon, District Judge.**

Plaintiff James Heino, appearing *pro se*, brought a small claims lawsuit against the U.S. Center for Medicare[1] (CMS) and Aetna Health Management LLC[2] (Aetna). Plaintiff asserts claims for breach of contract and violations of consumer protection laws. Aetna removed the

---

[1] Based on context, the Court infers that Plaintiff intended to name as a defendant the United States Centers for Medicare & Medicaid Services, the federal agency that administers the Medicare program.

[2] Aetna contends that it was erroneously named in this lawsuit and that the proper name for this defendant is Aetna Better Health of Michigan, Inc.

case to this Court. Aetna now moves to dismiss Plaintiff's claims on grounds of lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff did not respond to Aetna's motion to dismiss. For the following reasons, the Court grants Aetna's motion and dismisses Plaintiff's claims against Aetna. Additionally, the Court *sua sponte* dismisses Plaintiff's claims against CMS.

## A.  Legal Standards

### 1.  Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks omitted). Thus, a court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (noting that when a court lacks subject-matter jurisdiction, meaning it lacks the statutory or constitutional power to adjudicate a case, the court must dismiss the complaint, even *sua sponte* if necessary).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone*, 373 F.3d at 1039. A facial attack on subject matter jurisdiction is based on the assertion that the allegations contained in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039).

Aetna brings a factual challenge to the Court's subject matter jurisdiction. When a defendant factually challenges the plaintiff's assertion of jurisdiction, a court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Robinson*, 586 F.3d at 685; *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (citation and quotation marks omitted).

## 2. Failure to State a Claim

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint

"may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

### 3.  *Pro Se* Plaintiffs

A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quotation marks omitted). "Unless it is absolutely clear that no amendment can cure the defect, . . . a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action."

PAGE 4 – OPINION AND ORDER

*Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## B.  Background

Plaintiff filed this lawsuit in the Small Claims Department for Polk County Circuit Court. Plaintiff asserts a claim for breach of contract against CMS and Aetna (collectively, Defendants).[3] Plaintiff also alleges that Defendants violated unspecified consumer protection laws. Aetna timely removed this case to federal court.

---

[3] Plaintiff's claims are detailed in multiple documents. Plaintiff served Aetna with a Small Claim and Notice of Small Claim (Notice of Claim) in which Plaintiff provides only a cursory description of his claims. ECF 1-1 at 6-8. The Notice of Claim document instructs Plaintiff to describe his efforts to collect his claim from Defendants before filing the action. In response to this instruction, Plaintiff states that he "sent [a] notice to litigate" to both Defendants on April 13, 2022 (April 13th Letter). *Id.* at 8. According to Aetna's Notice of Removal (ECF 1), Plaintiff filed a copy of the April 13th Letter concurrently with his Notice of Claim. In the April 13th Letter, Plaintiff provides additional details and factual allegations for his claims. *See* ECF 1-5. The Court considers and refers to this collection of documents (the Notice of Claim, together with the April 13th Letter) as Plaintiff's "Complaint." Additionally, when Plaintiff served Aetna, Plaintiff included a cover letter, dated July 11, 2023 (July 11th Letter), in which Plaintiff provided more details relating to his claims. *See* ECF 1-1 at 4-5. The Court considers the July 11th Letter, as well as the declaration submitted by Aetna (ECF 2), in evaluating Aetna's factual attack on the Court's jurisdiction.

Plaintiff's claims are based on his enrollment in a health care benefits program, which

Plaintiff refers to as the "Aetna Medicare Plan D Enrollment Plan."[4] Plaintiff enrolled in this

benefits program after seeing an ad campaign that featured prominently the slogan "It's Free!"

Plaintiff alleges that within two weeks of his enrollment in the program, he began receiving

monthly bills from Aetna for $45.70. When Plaintiff inquired to Aetna about the bill, Aetna's

agent informed Plaintiff that the bill was a late enrollment penalty in connection with Plaintiff's

late enrollment in Medicare's prescription drug coverage more than a decade earlier. Plaintiff

paid the first $45.70 bill that he received, but ceased further payments. Plaintiff's health benefit

coverage was then "frozen." Plaintiff alleges that the $45.70 monthly billing charges were not

disclosed to him at the time of enrollment, and that those charges therefore violated his contract

with Defendants and were illegal under consumer protection laws.

## C.  Analysis

### 1.  Removal

Plaintiff does not challenge Aetna's removal of this action to federal court or move to

remand this case to state court. Because removal implicates the Court's jurisdiction, however, the

Court examines *sua sponte* whether this action was properly removed to federal court. Aetna

asserts two grounds as the basis for its removal of this action.

#### a.  Federal Question Jurisdiction

First, Aetna argues that this case was properly removed to federal court because

Plaintiff's claims arise under the Medicare Act (Act), which is a federal statute that vests this

Court with federal-question jurisdiction under 28 U.S.C. § 1331. Federal district courts have

---

[4] The Court presumes that Plaintiff's reference to "*Plan* D" was intended to refer to Medicare *Part* D.

original and removal jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331 (federal question jurisdiction); *see also id*. § 1441 (removal jurisdiction). "A case 'arises under' federal law either where federal law creates the cause of action or 'where the vindication of a right under state law necessarily turn[s] on some construction of federal law.'" *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088-89 (9th Cir. 2002) (alteration in original) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.,* 463 U.S. 1, 8-9 (1983)). "Federal question jurisdiction thus exists over a claim stating a cause of action under federal law unless the 'allegation was clearly immaterial,' or the claim was made 'solely for the purpose of obtaining jurisdiction.'" *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1151-52 (9th Cir. 2013) (quoting *Thompson v. Thompson,* 798 F.2d 1547, 1550 (9th Cir. 1986)). A district court has subject matter jurisdiction to determine whether a federal statute provides to a plaintiff a cause of action. *Parra*, 715 F.3d at 1152; *cf. United States v. Ruiz*, 536 U.S. 622, 628 (2002) ("a federal court always has jurisdiction to determine its own jurisdiction"); *Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Before deciding that there is no jurisdiction, the district court must look to the way the complaint is drawn to see if it is drawn so as to claim a right to recover under the Constitution and laws of the United States.").

Generally, the "presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). In the context of the Act, however, "courts have considered numerous cases that do not, on their face, appear to claim specific Medicare benefits or reimbursements yet have been found to arise under Medicare. One category of such cases are those cases that are 'cleverly concealed claims for benefits.'" *Kaiser*, 347 F.3d at 1112

(alteration omitted) (quoting *United States v. Blue Cross & Blue Shield of Ala., Inc.*, 156

F.3d 1098, 1109 (11th Cir. 1998)).

A state law claim "may 'arise under' the Medicare Act, creating a federal question

independent of whether there is complete preemption, if either: (1) both the standing and the

substantive basis of the claim is the Medicare Act; or (2) if the claim is 'inextricably intertwined'

with a claim for Medicare benefits." *Kaohi v. Kaiser Found. Health Plan, Inc.*, 2015

WL 13732666, at *2 (D. Haw. Aug. 31, 2015), *report and recommendation adopted*, 2015

WL 6472231 (D. Haw. Oct. 27, 2015); *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1141 (9th

Cir. 2010) (a claim "arises under" the Act "(1) where the 'standing and the substantive basis for

the presentation of the claims' is the Medicare Act" or "(2) where the claims are 'inextricably

intertwined' with a claim for Medicare benefits" (quoting *Heckler v. Ringer*, 466 U.S. 602, 614-

15 (1984))); *cf. Parra*, 715 F.3d at 1152 ("Because interpretation of the federal Medicare Act

presents a federal question, the district court had subject matter jurisdiction to determine whether

that act created a cause of action[.]" (cleaned up)). A claim is inextricably intertwined with a

claim for Medicare benefits if it is "ultimately one for benefits under the Act." *Uhm*, 620 F.3d at

1141. "[E]ven a state law claim may 'arise under' the Medicare Act." *Id.* at 1142 (citing *Kaiser

v. Blue Cross of Cal.*, 347 F.3d 1107, 1113-15 (9th Cir. 2003)).

Plaintiff's breach of contract claim is based on Plaintiff receiving a bill for a Medicare

late enrollment penalty after Plaintiff enrolled in a Medicare benefits program advertised as

"free." As noted above, Plaintiff requests as relief that Defendants "waive any and all costs"

associated with his Medicare benefits and "restore [Plaintiff's] full benefits remaining." Plaintiff

is, at bottom, seeking reconsideration of the Medicare late enrollment penalty and reinstatement

of his health care benefits under the Act. Plaintiff's claims are thus inextricably intertwined with

a claim for Medicare benefits. The Court finds that Aetna properly removed this case to federal court on the ground that Plaintiff's claims arise under the Act and thus present a federal question.

### b. Federal Officer Removal Statute

Aetna also asserts that removal was proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), because Aetna acts as a federal officer pursuant to a contract with CMS to provide Medicare Services under the Act. The Court reaches this argument as an alternative ground for its jurisdiction to decide Aetna's Motion to Dismiss. "An entity seeking removal under § 1442(a)(1) bears the burden of showing that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a colorable federal defense." *Goncalves ex rel. Goncalves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (cleaned up). "The federal officer removal statute is to be 'liberally construed,' but 'a liberal construction nonetheless can find limits in [the statute's] language, context, history, and purposes.'" *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 684 (9th Cir. 2022) (alteration in original) (quoting *Watson v. Phillip Morris Cos., Inc.*, 551 U.S. 142, 150 (2007)).

Aetna is a "person" within the meaning of the statute; the first element for federal officer removal is met. *See* 1 U.S.C. § 1 ("person" includes "corporations" and "companies"). As to the second element, the Court must consider whether Aetna's actions "were taken 'pursuant to a federal officer's directions,' or while 'acting under that officer.'" *Saldana*, 27 F.4th at 684 (citation omitted) (first quoting *Stirling v. Miniasian* 955 F.3d 795, 800 (9th Cir. 2020); and then quoting 28 U.S.C. § 1442(a)(1)). "The relationship between someone acting under a federal officer and the federal officer typically involves subjection, guidance, or control." *Stirling*, 955 F.3d at 800. "Extensive federal regulation alone is insufficient" to show the requisite relationship. *Id.* (cleaned up). "For a private entity to be 'acting under' a federal officer, the

PAGE 9 – OPINION AND ORDER

private entity must be involved in 'an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior.'" *Goncalves*, 865 F.3d at 1245 (emphasis in original) (quoting *Watson*, 551 U.S. at 152). "[T]he assistance that private contractors provide federal officers must go beyond simple compliance with the law and help officers fulfill other basic governmental tasks." *Id.* (cleaned up).

District courts across the United States have grappled with whether Medicare Advantage organizations (MAOs) like Aetna "act under" federal officials for purposes of federal officer removal and have reached different conclusions.[5] *Compare Escarcega v. Verdugo Vista Operating Co.*, 2020 WL 1703181, at \*6-7 (C.D. Cal. Apr. 8, 2020) (collecting cases and finding that MAOs act under federal officers in administering Medicare benefits), *with, e.g.*, *Premier Inpatient Partners LLC v. Aetna Health and Life Ins. Co.*, 362 F. Supp. 3d 1217, 1225 (M.D. Fla. 2019) (finding that the MAO failed to demonstrate that it was acting under the control of a federal officer). The Court finds the district court's analysis in *Escarcega* persuasive. There, the court explained:

> By administering Medicare benefits, MAOs and downstream entities "assist, or help carry out, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152. This relationship is deeper than simply operating in a heavily regulated field, because if MAOs and downstream entities did not perform their tasks, the

---

[5] Based on the Court's review of relevant caselaw, no federal Court of Appeals has reached this precise issue in a precedential decision. The Ninth Circuit recently acknowledged the existence of this issue, but did not reach it. *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 917 n.5 (9th Cir. 2022) ("We have no occasion here to decide whether Medicare Advantage organizations would qualify as officers or employees of the United States under other statutes, such as the federal officer removal statute or the Federal Tort Claims Act."). The Sixth Circuit has addressed this issue, albeit in an unpublished opinion, and held that "the relationship between CMS and MAOs is not so unusually close that Humana may wield the officer-removal statute." *Ohio State Chiropractic Ass'n v. Humana Health Plan Inc.*, 647 F. App'x 619, 622-23 (6th Cir. 2016).

> government would have to carry out the work of administering
> Medicare itself. While MAOs and downstream entities may
> operate with less direct supervision than providers under Medicare
> Part B, they still help "fulfill a basic governmental task" by
> administering Medicare benefits. *Id.* at 153. In this way, the
> government's relationship to these entities is "more akin to a
> delegation of CMS administrative obligations than a regulation of
> otherwise private insurance." *Body & Mind* [*Acupuncture v.
> Humana Health Plan, Inc.*], 2017 WL 653270, at *5 [N.D. W. Va.
> Feb. 16, 2017]. In sum, MAOs . . . and CMS have "an unusually
> close relationship involving detailed regulation, monitoring, and
> supervision." *Id.* The Court recognizes that the issue is close, but in
> light of the Supreme Court's directive that federal officer removal
> should be liberally construed, the Court finds that Regal "acted
> under" federal officers in administering Medicare benefits.

*Escarcega*, 2020 WL 1703181, at *7 (cleaned up). Similarly, the Court recognizes that this case

presents a close issue. But because Aetna helps CMS to administer the health benefits plan

underlying the claims at issue, and in light of the Supreme Court's directive that the federal

officer removal statute should be liberally construed, the Court finds that Aetna "acts under" the

direction of CMS for purposes of federal officer removal.

If a court determines that an entity "acts under" the direction of CMS, the "hurdle erected

by the causal-connection requirement is quite low." *Goncalves*, 865 F.3d at 1244 (cleaned up);

*see also Maryland v. Soper*, 270 U.S. 9, 33 (1926) ("[T]he statute does not require that the

prosecution must be for the very acts which the officer admits to have been done by him under

federal authority. It is enough that his acts or his presence at the place in performance of his

official duty constitute the basis, though mistaken or false, of the state prosecution."). Aetna

"need show only that the challenged acts 'occurred *because of* what they were asked to do by the

Government.'" *See Goncalves*, 865 F.3d at 1245 (emphasis in original) (quoting *Isaacson v. Dow

Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008)). CMS directed Aetna to administer the Medicare

Plan in accordance with the Medicare Regulations. Because of this directive, Aetna promulgated

marketing material, approved by CMS, that Plaintiff now challenges as misleading. Aetna also

sent to Plaintiff, at the direction of CMS, monthly bills associated with a Medicare late enrollment penalty—an action that also forms the basis for Plaintiff's claims. Thus, the Court is satisfied that the low hurdle to establish the causal-connection requirement has been met.

Finally, the third question for the federal officer removal analysis is whether Aetna presents a colorable federal defense to Plaintiff's claims. This "does not require a demonstration that the removing party will win its case." *Escarcega*, 2020 WL 1703181, at *7 (citing *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)). Aetna raises defenses of failure to exhaust administrative remedies under the Act and preemption. As explained below, these defenses are colorable. *See id.* (finding Medicare preemption and failure to exhaust administrative remedies to be colorable defenses). Thus, the Court is satisfied that Aetna properly removed this case under the federal officer removal statute.

### 2. Aetna's Motion to Dismiss

Aetna moves to dismiss Plaintiff's Complaint on multiple grounds. First, Aetna asserts that Plaintiff failed to allege exhaustion of mandatory administrative remedies under the Act. Second, Aetna argues that Plaintiff's state-law breach of contract claim is preempted by the Act. Finally, Aetna argues that Plaintiff failed to allege facts necessary to maintain the asserted breach of contract claim.

#### a. Failure to Exhaust Administrative Remedies

Aetna argues that Plaintiff's breach of contract claim arises under the Act, and is thus subject to mandatory administrative requirements. Because Plaintiff fails to allege exhaustion of administrative remedies, Aetna contends that Plaintiff's breach of contract claim should be dismissed for lack of subject matter jurisdiction.

"Title XVIII of the Social Security Act . . . commonly known as the Medicare Act, establishes a federally subsidized health insurance program[.]" *Heckler*, 466 U.S. at 605.

"[F]ederal courts generally lack subject matter jurisdiction to review the denial of a claim for Medicare benefits unless the beneficiary exhausts all available levels of administrative review." *Glob. Rescue Jets*, 30 F.4th at 917. In other words, judicial review of "claims arising under the Medicare Act is available only after the Secretary renders a 'final decision' on the claim," as provided in 42 U.S.C. § 405(g).[6] *Heckler*, 466 U.S. at 605. As discussed above, a claim "arises under" the Act by virtue of being "inextricably intertwined" with a claim for Medicare benefits if it is "ultimately one for benefits under the Act." *Uhm*, 620 F.3d at 1141.

Plaintiff requests as relief that Defendants "waive any and all costs" associated with his Medicare benefits and "restore [Plaintiff's] full benefits remaining." Plaintiff is, at bottom, seeking reconsideration of the Medicare late enrollment penalty and reinstatement of his health care benefits under the Act. *See Uhm* 620 F.3d at 1141-42 ("[W]here, at bottom, a plaintiff is complaining about a denial of Medicare benefits . . . the claim 'arises under' the Medicare Act."). This relief is provided for under the Act regulations. *See* 42 C.F.R. § 423.46(c) (late enrollment penalty reconsideration); *see also* 42 C.F.R. Pt. 423, Subpt. M (grievances, coverage determinations, redeterminations, and reconsiderations). Plaintiff's breach of contract claim is "inextricably intertwined" with a claim for Medicare benefits and thus is subject to the exhaustion requirement under the Act. Because Plaintiff does not allege that he has exhausted administrative remedies before filing this lawsuit, the Court dismisses Plaintiff's breach of contract claim against Aetna for lack of subject matter jurisdiction. The Court grants Plaintiff leave to amend, not later than January 19, 2024, if Plaintiff can allege in good faith that he exhausted his administrative remedies.

---

[6] The procedure for obtaining judicial review of an administrative determination of entitlements to benefits, including Medicare benefits, under the Social Security Act is set forth in 42 U.S.C. § 405(g).

**b. Violations of Unspecified Consumer Protection Laws**

When construed liberally, Plaintiff's Complaint alleges more than just a claim for breach

of contract. Plaintiff also appears to allege violations of unspecified consumer protection laws.[7]

"Consumer protection claims do not always 'arise under' the Medicare Act[.]" *Glob. Rescue*

*Jets*, 30 F.4th at 918. For example, in *Uhm*, the Ninth Circuit examined allegations "that Humana

made material misrepresentations and engaged in other systematic deceptive acts in the

marketing and advertising of their Part D plan to induce" the plaintiffs and putative class

members to enroll in the Medicare Part D program. 620 F.3d at 1145. The Ninth Circuit

observed:

> The basis of these claims is an injury collateral to any claim for
> benefits; it is the misrepresentations themselves which the Uhms
> seek to remedy. The Uhms may be able to prove the elements of
> these causes of action without regard to any provisions of the Act
> relating to provision of benefits. To the extent that is the case, the
> Uhms claims are not subject to the Act's exhaustion provisions.

*Id.*

Plaintiff generally refers to consumer protection laws in the Complaint (as liberally

construed by the Court as including Plaintiff's April 13th Letter) and alleges that Defendants

engaged in deceptive marketing practices to induce Plaintiff and other seniors to enroll in the

Medicare health benefits program. These allegations are substantially similar to those discussed

by the Ninth Circuit in *Uhm*. The Court concludes that Plaintiff's consumer protection claim is

not subject to the Act's exhaustion requirement, and not subject to dismissal for lack of subject

matter jurisdiction.

---

[7] Aetna does not address Plaintiff's allegations of consumer protection violations in its
Motion to Dismiss. The Court considers Aetna's arguments for preemption under the Act and for
failure to state a claim in the context of Plaintiff's construed consumer protection claim.

Plaintiff, however, provides no indication as to which consumer protection laws he believes Defendants have violated. Because Plaintiff initially filed this suit in Oregon state court, and because federal consumer protection statutes generally do not provide a private right of action, *see Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 988-89 (D.C. Cir. 1973), the Court liberally construes Plaintiff's allegations as asserting a claim under Oregon's Unlawful Trade Practices Act (UTPA), Oregon Revised Statutes (ORS) § 646.605 *et seq.* The Court recognizes that Plaintiff's allegations related to this claim are vague and conclusory, and are insufficient to support this cause of action. *See Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). In the interest of judicial efficiency, and to aid the Court in reaching a determination about the futility of amending this claim, however, the Court sets aside the issue of vagueness to reach the issue of preemption under the Act.

"The Supreme Court has made clear that Congress may displace state law through express preemption provisions." *Uhm*, 620 F.3d at 1148 (citing *Altria Grp., Inc. v. Good,* 555 U.S. 70, 76-77 (2008)). "[W]hen federal law preempts all [remaining] claims in a complaint, dismissal for failure to state a claim is appropriate." *Phelps v. Wyeth, Inc.*, 857 F. Supp. 2d 1114, 1122 (D. Or. 2012) (citing *Whistler Invs., Inc. v. Depository Tr. & Clearing Corp.*, 539 F.3d 1159, 1163 (9th Cir. 2008)); *see also Kent v. DaimlerChrysler Corp.*, 200 F. Supp. 2d 1208, 1212 (N.D. Cal. 2002) ("Where a state law claim is preempted by federal law, that claim must be dismissed for failure to state a claim because the claimant cannot prove any set of facts that will support the claim for relief.").

"Medicare Part D incorporates the express preemption provision" contained in Part C of the Act. *Uhm*, 620 F.3d at 1150 (citing 42 U.S.C. § 1395w-112(g)). The Part C preemption provision provides:

> The standards established under this part shall supersede any State
> law or regulation (other than State licensing laws or State laws
> relating to plan solvency) with respect to [Medicare Advantage
> (MA)] plans which are offered by MA organizations [(MAOs)]
> under this part.

42 U.S.C. § 1395w-26(b)(3); *see also* 42 C.F.R. § 423.440(a) (incorporating the same language into the Part D implementing regulation, which provide: "The standards established under this part supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) for Part D plans offered by Part D plan sponsors."). This preemption provision means that "at the very least, any state law or regulation falling within the specified categories and 'inconsistent' with a standard established under the Act" is preempted. *Uhm*, 620 F.3d at 1150.

The Court again finds the Ninth Circuit's analysis in *Uhm* instructive. In *Uhm*, the plaintiffs alleged that they chose Humana as their Part D provider based in part on the representations Humana made in its marketing materials. *Id.* at 1138. The plaintiffs brought, among others, a claim under state-law consumer protection statutes for alleged misrepresentations in Humana's marketing materials. The Ninth Circuit held that the plaintiffs' state-law consumer protection claim was preempted by the extensive regulations governing marketing materials for Part D plans. *Id.* at 1150. The Ninth Circuit explained:

> The Act provides that CMS must approve all [Part D
> prescription drug plan (PDP)] marketing materials before they are
> made available to Medicare beneficiaries. *See* 42 U.S.C. § 1395w-
> 101(b)(1)(B)(vi) (incorporating *id.* § 1395w-21(h)). The Act
> requires that each Part D sponsor "shall conform to fair marketing
> standards," *id.* § 1395w-21(h)(4), and that CMS "shall disapprove
> (or later require the correction of) such material or form if the
> material or form is materially inaccurate or misleading or
> otherwise makes a material misrepresentation," *id.* § 1395w-
> 21(h)(2). In 2005, CMS promulgated detailed regulations
> governing how Part D sponsors market their plans. *See* 42 C.F.R.
> § 423.50(a)-(f) (2005). Under those regulations, Part D sponsors
> were not to "distribute any marketing materials . . . or enrollment

> forms, or make such materials or forms available to Part D eligible
> individuals" unless they had been CMS-approved. *Id.*
> § 423.50(a)(1). Moreover, under both the 2005 version of these
> provisions and their most recent amendment in 2008, CMS is
> required to screen marketing materials or enrollment forms to
> ensure they are not "materially inaccurate or misleading" and do
> not "otherwise make material misrepresentations." *Id.*
> § 423.50(d)(4) (redesignated as *id.* § 423.2264(d) (2008)). CMS
> must also ensure that all marketing materials and enrollment forms
> provide adequate descriptions of all rules, an explanation of the
> grievance and appeals process, and "any other information
> necessary to enable beneficiaries to make an informed decision
> about enrollment." *Id.* § 423.50(d)(1) (redesignated as *id.*
> § 423.2264(a) (2008)).

*Id.* at 1150-51 (cleaned up). The Ninth Circuit explained that, because the state-law consumer

protection statutes at issue in *Uhm* "are much less specific" than the standards specified under

the Act and because those statutes "do not provide for CMS review," those statutes are

"inconsistent" with the Act's standards. *Id.* at 1152. "In other words, application of these state

laws could potentially undermine the Act's standards as to what constitutes non-misleading

marketing." *Id.* The Ninth Circuit concluded that because the plaintiffs' state-law consumer

protection claim was inconsistent with the Act's standards, the claim was expressly preempted

by the Act. The Ninth Circuit thus affirmed the district court's dismissal of the state-law

consumer protection claim. *See id.* at 1153.

Applying the reasoning of *Uhm*, the Court finds that Plaintiff's remaining consumer

protection claim is preempted by the Medicare Act. Aetna is an MAO that administers the

Medicare Plan and offers a prescription drug plan. *See* ECF 2 ¶ 5; ECF 1-1 at 4 (July 11th Letter)

(describing services, including prescription drug coverage, offered to Plaintiff by Aetna). Aetna

is a "Part D Plan sponsor" under the Medicare regulations and is thus subject to CMS regulations

related to its marketing materials. *See* 42 C.F.R. § 423.4; *id.* § 440(a). The Oregon law

implicated by Plaintiff's consumer protection allegations and construed by the Court as the

statutory foundation for this claim, the UTPA, is "much less specific" than the standards

proscribed under the Act and "could potentially undermine the Act's standards as to what

constitutes non-misleading marketing." *See, e.g.*, ORS § 646.608(1)(s) (stating a person engages

in an unlawful practice if the person "makes false or misleading representations of fact

concerning the offering price of . . . services"); *see also Uhm*, 620 F.3d at n.30 (explaining that

the application of the Washington state consumer protection law to Part D marketing material is

inconsistent with the Act's standards because "material deemed not to be misleading by CMS

[could] subsequently be declared 'unfair or deceptive' under Washington state law.")  The Court

finds that Plaintiff's state-law consumer protection claim is expressly preempted by the Act and

dismisses this claim.

Further, because Plaintiff's consumer protection claim is expressly preempted by the Act,

"no set of facts can be proved under the amendment to the pleadings that would constitute a valid

and sufficient claim or defense." *See Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th

Cir. 2018) (quoting *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997)). This makes

any amendment of this claim futile. *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th

Cir. 2017) ("An amendment is futile when no set of facts can be proved under the amendment to

the pleadings that would constitute a valid and sufficient claim or defense." (quotation marks

omitted)). The Court thus declines to grant Plaintiff leave to amend this claim on the ground of

futility.

**D.  Claims Against CMS**

A trial court may *sua sponte* dismiss claims under Rule 12(b)(6) of the Federal Rules of

Civil Procedure, even shortly before trial. *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th

Cir. 1987); *see also Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) ("As

a legal matter, we have upheld dismissal with prejudice in favor of a party which had not

appeared, on the basis of facts presented by other defendants which had appeared."); *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related."). A court also must dismiss any claim over which it lacks subject matter jurisdiction, including *sua sponte*. Fed. R. Civ. P. 12(h)(3); *Pistor*, 791 F.3d at 1111.

Based on the information available to the Court, it does not appear that Plaintiff has accomplished service on CMS and thus CMS has not responded to the Complaint or moved to dismiss. In the interest of judicial efficiency, however, the Court assesses *sua sponte* the sufficiency of Plaintiff's claims against CMS. There is no material difference between Plaintiff's claims against CMS and Aetna, and the analysis stated earlier is equally applicable to Plaintiff's claims against CMS. Plaintiff's breach of contract claim is subject to the requirement that Plaintiff exhaust administrative remedies irrespective of the party named as a defendant. Further, Plaintiff's state-law consumer protection claim is preempted under the Act because the allegations related to misleading marketing materials are inconsistent with CMS regulations, again irrespective of the party against which Plaintiff asserts this claim. Thus, the Court *sua sponte* dismisses Plaintiff's breach of contract claim against CMS for failure to exhaust administrative remedies and dismisses Plaintiff's state-law consumer protection claim against CMS on the ground that this claim is expressly preempted under the Act.

**E.  Conclusion**

The Court GRANTS Aetna's motion to dismiss, ECF 5, and DISMISSES Plaintiff's claims against Aetna. The Court also *sua sponte* dismisses Plaintiff's claims against United States Centers for Medicare & Medicaid Services. Plaintiff may file an amended complaint on or

before January 19, 2024, if Plaintiff can allege in good faith that he exhausted his administrative

remedies.

**IT IS SO ORDERED.**

DATED this 22nd day of December, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge